UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HANSEN PERMANENTE CEMENT OF GUAM, INC., <br><br> Plaintiff, <br><br> v. <br><br> PORT AUTHORITY OF GUAM, <br><br> Defendant. | CASE NO. CV 01-00005 <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Pursuant to the stipulation of the parties, this civil case was called for trial before the Court without a jury on May 2, 2005. The Court having heard all of the testimony and considered all admissible evidence, as well as the arguments of counsel and their respective proposed Findings of Fact and Conclusions of Law, hereby enters its Findings of Fact and Conclusions of Law in this case in conformity with Federal Rule of Civil Procedure 52. Any Finding of Fact that constitutes a Conclusion of Law shall be deemed a Conclusion of Law, and any Conclusion of Law that constitutes a Finding of Fact shall be deemed a Finding of Fact.

\\\

## FINDINGS OF FACT

1. Plaintiff Hanson Permanente Cement of Guam, Inc. ("Hanson") is in the business of importing cement from foreign countries to Micronesia.
2. Hanson was formerly known as Kaiser Cement & Gypsum Corporation ("Kaiser").
3. Defendant Port Authority of Guam ("the Port") is a public corporation and autonomous instrumentality of the government of Guam responsible for the administration of the Apra Harbor, Commonwealth of Guam.
4. The Port is required to regulate vessels and shipping within Apra Harbor consistent with its published terminal tariff.
5. The Port is authorized by law to fix rates, dockage, rentals, tolls, pilotage, wharfage, and charges for the use and occupation of the public facilities or appliances of the Port, and for services rendered by the Port and to provide for the collection thereof.
6. The Port's terminal tariff authorizes assessment of a port entry fee on each vessel which enters the Port. Hanson or its shipping subcontractor has paid and continues to pay this fee without dispute.
7. On January 14, 1971 Kaiser entered into a twenty year sublease agreement for a parcel of land in the Apra Harbor with the Guam Economic Development Authority ("GEDA").
8. The 1971 sublease was assigned by GEDA to the Port Authority of Guam ("the Port").
9. The parcel of land subleased by Kaiser is identified as "Lot 6" on ESCO International Drawing No. 3038-3, a document approved by the Department of Land Management on February 10, 1970 ("the ESCO Drawing").
10. The annual rental for Lot 6 was $5,775.
11. On March 15, 1991, Hanson and the Port entered into an amendment and renewal of the sublease for an additional ten years at and annual rent of $111,641.21.
12. On March 12, 2001, Hanson and the Port extended the sublease for an additional ten years at the same rent.
13. The submerged lands fronting Lot 6 were owned by the United States until June 7, 2000, when they were transferred to the government of Guam via quitclaim deed.

14. At the time of the 1971 sub-lease, there were no improvements on Lot 6.
15. The 1971 sublease provides in pertinent part:
    a. In paragraph four that: "Lessor [the Port] shall also grant to Lessee [Kaiser] all necessary rights on, across and within land owned or controlled by Lessor fronting on the waterfront of the subleased premises to enable Lessee to install, at Lessee's cost . . . facilities for the loading and unloading of vessels in facilities adjacent to the subleased premises;" and
    b. In paragraph six that: "The Lessee shall have the right . . . to erect and construct on the subleased premises any and all buildings, facilities, structures, pipelines, gas works, terminals . . . without the necessity of securing the consent of the Lessor. No buildings, structures, improvements and equipment, erected, constructed, installed or owned by the lessee shall become part of the subleased premises, but shall remain the property of the Lessee . . . ."
16. Hanson has expended millions of dollars in the years since 1971 building a variety of structures on Lot 6, including a seawall, a concrete dock and wharf, a 181-foot tall concrete silo to store imported cement, and a pipeline to off-load cement from ships berthed at Lot 6.
17. Construction costs and maintenance costs for all facilities have been paid exclusively by Hanson
18. Concrete is delivered to the Hanson facility by oceangoing ship. These deliveries were primarily made by the M/V Norman, a ship formerly owned by Hanson. Deliveries have at times been made by other ships contracted for by Hanson.
19. The channel directly adjacent to the Hanson dock is not of a sufficient depth to allow for a ship loaded with concrete to berth.
20. In order to allow ships to dock, Hanson has installed a "breasting barge," which is moored to Hanson's dock. This barge allows the ship to berth at a distance from the dock where the channel is sufficiently deep (at high tide) to allow a loaded ship to berth.
21. Hanson has made requests to the Port to dredge the channel so as to eliminate the

necessity and expense of the breasting barge.

22. The Port has not dredged the channel adjacent to the Hanson dock.

23. Hanson never offloads cement at any dock within Apra Harbor other than the Hanson dock.

24. The dock facilities built by Hanson are expressly for the purpose of offloading bulk concrete and are not a general cargo facility.

25. Since 1993, the Port has submitted invoices including charges for dockage and wharfage to Hanson's shipping agents Mapship and Marianas Steamship for cement delivery ships that have berthed at the Hanson dock.

26. Hanson has protested the dockage and wharfage charges billed to its shipping agents.

27. At the request of the Port, Hanson has at times in the past allowed vessels not involved in delivering bulk concrete to berth at the Hanson dock. Those ships have not been charged dockage or wharfage by Hanson.

## CONCLUSIONS OF LAW

### I. Violation of the Sublease (Count VII)

28. The 1971 sublease agreement in combination with the ESCO Drawing provide that the "boundary follows mean high water line. Meander line not monumented. Reference monuments T-5, K-20, T-6, & T-7 were set instead." However, the area demarcated by those monuments does not include the southwest boundary of Lot 6. Two enlargements of details on the ESCO Drawing indicate that the southwest boundaries of Lot 6 and Lot 5 fall in the water. The specificity of these enlargements override the general note on the ESCO Drawing regarding the monuments and meandering boundary.

29. The concrete dock and seawall built by Hanson fall within the boundaries of Lot 6.

30. Even if the boundaries of Lot 6 on the ESCO Drawing do not include the dock and seawall, under paragraph four of the 1971 sublease, there exists an easement appurtenant to the waterfront of Lot 6.

31. Paragraph six of the 1971 sublease applies both to buildings, structures, improvements and equipment on Lot 6 and within the easement appurtenant granted by paragraph four

| | | |
|---|---|---|
| 1 | | of the 1971 sublease. |
| 2 | 32. | The concrete dock and seawall are the property of Hanson. |

## II. Violation of Port Tariff (Count V)

33. The Hanson dock does not constitute a "public facility . . . of the Port" as contemplated by 12 Guam Code Ann. section 10104(j). Accordingly, the Port is not authorized under the terminal tariff to charge wharfage or dockage fees for the berthing of concrete delivery ships at the Hanson dock.

## III. Takings (Count III)

34. The Bill of Rights of the Organic Act of Guam, states that "[p]rivate property shall not be taken for public use without just compensation." 48 U.S.C. § 1421b(f). This right parallels the protection of the Fifth Amendment of the United States Constitution.

35. The government may not destroy or impair the value of a private wharf or dock without just compensation. *See Weems Steamboat Co. v. People's Steamboat Co.*, 214 U.S. 345, 355-56, 29 S. Ct. 661, 663-64 (1909).

36. The Port's actions in charging dockage or wharfage fees to Hanson or its agents for the use of the dock and facilities of Lot 6 constitute an unlawful taking under the Organic Act of Guam and the Fifth Amendment of the United States Constitution.

## IV. Federal Common Law (Count IV) and Admiralty (Count VII)

37. There is no justification in the law for the Port to charge wharfage and dockage for the use of the private Hanson dock on Lot 6.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

## DISPOSITION

38. If any of the foregoing Conclusions of Law are also Findings of Fact they are incorporated in the above Findings of Fact.
39. Each Conclusion of Law is severable from each and every other Conclusion of Law.
40. The Court declares that consistent with the Findings of Facts and Conclusions of Law that the wharfage and dockage fees asserted by the Port upon Hanson are in violation of the 1971 sublease, the Port's tariff, federal common law, the Organic Act of Guam, and the Fifth Amendment of the United States Constitution. Accordingly, the Court finds in favor of Hanson on all Counts and against the Port on all counterclaims.

IT IS SO ORDERED.

DATED: May 6, 2005

*David O. Carter*
DAVID O. CARTER
United States District Judge

Notice is hereby given that this document was entered on the docket on MAY 0 6 2005.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam

By: _____ MAY 0 6 2005
Deputy Clerk       Date